IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VANESSA WILLIAMS**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:12-CV-2692-RDP |
| | ) |
| **CAROLYN W. COLVIN**, **Acting Commissioner, Social Security Administration,** | ) ) ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OF DECISION

Plaintiff Vanessa Williams brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her applications on August 16, 2007 alleging that her disability began on June 12, 2006. (Tr. 127, 144-45). Plaintiff's applications were initially denied by the Social Security Administration on July 3, 2008. (Tr. 85-87). Plaintiff then requested and received a hearing before Administrative Law Judge Edward S. Zanaty ("ALJ"). (Tr. 60-83, 99). In his decision, dated April 19, 2010, the ALJ determined that Plaintiff has not been under a disability as defined in the Act from June 12, 2006, through the date of his decision. (Tr. 33). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision

became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was fifty-three years old at the time of the hearing. (Tr. 44). Plaintiff is a high school graduate, and testified she attended Ballston State without receiving a degree or certification. (Tr. 44, 155). Plaintiff has over fifteen years of child care experience, as well as work experience as an adult care provider. (Tr. 159). Plaintiff alleges that she has been disabled since June 12, 2006 due to a back condition, leg problems, high blood pressure, high cholesterol, mental depression, and acid reflux. (Tr. 149).

Plaintiff testified that her disability began on June 12, 2006, after being laid off from Miss Pea's Daycare because of illness. (Tr. 50). Plaintiff was treated the next day at Jefferson County Department of Health ("JCDH") but only complained of a sore throat. (Tr. 240-41). Plaintiff had previously presented to JCDH complaining of neck pain in March 2006; however, after a physical examination, her neck was found to be normal. (Tr. 242).

During her alleged period of disability, Plaintiff repeatedly sought treatment from numerous medical examiners. Dr. Joseph Blankson, at the JCDH was one of those medical examiners. (Tr. 224-43, 353-55, 386-89, 429). In December 2006, Plaintiff complained of left leg and arm pain (Tr. 236). On examination, Plaintiff had muscle spasms in both shoulders, but Dr. Blankson noted her musculoskeletal system was normal (Tr. 236-37). Dr. Blankson opined Plaintiff had benign essential hypertension, esophageal reflux, obesity, arthropathy of the shoulder region, muscle spasms in her neck and shoulders, and primary insomnia. (Tr. 237). During check-ups from March through December 2007, Plaintiff complained of pain, particularly in the left side of her body. (Tr. 229, 230, 234). However, during each examination, Dr. Blankson noted Plaintiff's musculoskeletal system was normal, aside from a one-time

finding of lateral epicondylitis, also known as tennis elbow. (Tr. 220-30, 233, 235). Additionally, in October 2007, Dr. Chandra Prabha Haritha, at JCDH indicated Plaintiff's neck and lower back were normal, with good range of motion in her neck, though she experienced some discomfort, which radiated to her left shoulder. (Tr. 232).

Dr. Blankson again examined Plaintiff in April 2008, it was noting she had muscle spasms in her neck and shoulder, her musculoskeletal system was normal, and her neck rotation was normal. (Tr. 225). Dr. Blankson's assessment indicated Plaintiff had organic sleep-related leg cramps, along with other conditions previously diagnosed. (Tr. 226).

Consultative examiner Dr. Raveendran Meleth evaluated Plaintiff on May 28, 2008. (Tr. 255). He noted Plaintiff had spasms in her shoulders, walked slowly with a cane, and was unable to stand on her toes or tandem walk. He further noted she had normal motor strength and diminished deep tendon reflexes. (Tr. 256-58). Dr. Meleth diagnosed Plaintiff with a history of lower back pain due to degenerative joint disease, shoulder pain, hand pain due to osteoarthritis, anxiety, depression, and a history of panic attacks. (Tr. 258). He further noted that Plaintiff was not very compliant with the full range of motion examination, finding her too drowsy to test due to the multiple medications she was on. (Tr. 258).

Plaintiff underwent a consultative psychological evaluation in May 2008 with Dr. Thomas Boll. (Tr. 251-53). Dr. Boll described Plaintiff as nicely dressed and groomed, and walking heavily with a cane and with the assistance of a friend. He found Plaintiff to lead a very limited style of life functioning more or less independently with the help of some friends taking care of activities that are physically beyond her abilities. (Tr. 251-52). He determined that (1) Plaintiff's restricted activities secondary to her reported physical difficulties finding her dependent on others in many respects, and (2) her appearance, behavior, and ability to relate to

3

others limited but adequate. Additionally, he found as follows: Plaintiff was receptive and her expressive language were intact oriented to time, place, person, and situation; and Plaintiff was a slow responder but her attention, abstracting and general fund of information and memory did not appear impaired as she was able to provide information all the while complaining about difficulties in those areas. Dr. Boll further determined her estimated intelligence in the low average, thought processes normal, there was no tangential or circumstantial thinking or flight of ideas, her thought content was normal with no confusion, her conversation somewhat slow but generally normal, and her speech normal, and that she was only very mildly depressed. (Tr. 252). He described her affect somewhat restricted, but neither labile nor anxious. (Tr. 253). Her mood was very mildly depressed, and her insight found to be fair. (Tr. 253). Dr. Boll found Plaintiff able to carry out, remember, and understand instructions, and that she could respond appropriately to supervision and coworkers. (Tr. 253). Dr. Boll also found Plaintiff's examination to be a reasonably valid estimate of her current level of functioning, noting no diagnosis for Axis I and II, and multiple diffuse physical complaints and symptoms without full medical documentation as to Axis III. (Tr. 253).

On June 26, 2008 The Workplace, a disability determination service, ordered an x-ray of Plaintiff's back. (Tr. 274). The x-ray was reviewed by Dr. James M. Lance. Dr. Lance stated that the x-rays revealed no acute abnormalities. (Tr. 274-75). Plaintiff testified that her primary physician is Dr. Arthur McAdams. (Tr. 46). Plaintiff was initially seen by Dr. McAdams on September 12, 2008 at Southtown Clinic. (Tr. 329-30). Plaintiff complained of lower back pain, radiating to her legs, but also reported her medications relieved some of the pain. (Tr. 330). Plaintiff exhibited good range of motion in her upper and lower extremities. Dr. McAdams

diagnosed Plaintiff with hypertension, hyperlipidemia, gastroesophageal reflux disease ("GERD"), and depression. (Tr. 329-30).

Plaintiff returned to Dr. McAdams in October 2008 complaining of right shoulder pain, but denied headaches, shortness of breath, dizziness, and chest pains. (Tr. 369). Dr. McAdams completed a Physical Capacities Evaluation and Clinical Assessment of Pain that day indicating that Plaintiff was able to do the following: lift five pounds occasionally or less; sit for a total of one hour; stand and walk combined for a total of one hour during an eight hour day; but that she does require a cane to ambulate. (Tr. 398-400). Dr. McAdams also indicated some of Plaintiff's functional limitations including her pain present to such an extent as to be distracting to adequate performance of daily activities or work. (Tr. 399-400). He opined that physical activity would greatly increase pain to such a degree as to cause distraction from tasks or total abandonment of tasks, and that drug side effects could be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness. (Tr. 399-400). He also believed Plaintiff had an underlying medical condition consistent with the pain she reported. (Tr. 399-400). At the time of this particular assessment, Dr. McAdams had examined Plaintiff only twice.[1]

Plaintiff returned to JCDH in October 2008 complaining of left neck and shoulder pain. (Tr. 353-55). The doctor counseled Plaintiff about proper diet, obesity, and the proper use of her medications. (Tr. 354-55). Plaintiff again sought treatment from JCDH for left shoulder pain in March 2009 after suffering a fall the month before. (Tr. 351-52). X-rays were ordered and it was recommended that Plaintiff continue her medication and do shoulder exercises. (Tr. 351-52). Despite Plaintiff's complaints, an x-ray of her left shoulder taken in April 2009 was normal. (Tr. 357).

---

[1] Plaintiff would later be treated by Dr. McAdams again in January and May 2009.

Plaintiff returned to Dr. McAdams in January 28, 2009 where he noted mild tenderness in Plaintiff's lower back on examination. (Tr. 368). Upon follow-up in May 2009, Plaintiff complained of lower back and left shoulder pain, but also reported that the pain had improved somewhat. (Tr. 367). Upon examination, Plaintiff's left shoulder showed decreased range of motion due to pain; during the straight leg raise test, Plaintiff reported leg pain but no back pain (Tr. 367). Dr. McAdams noted Plaintiff's hypertension was well-controlled, her hyperlipidemia was stable, and she was experiencing depression, low back pain, left shoulder pain, and GERD. (Tr. 367).

Dr. Blankson saw Plaintiff again at JCDH on July 1, 2009 and noted that Plaintiff felt pain in her upper left arm when moving her shoulder, but found her shoulders were normal. (Tr. 389). On examination in August 2009, Plaintiff's musculoskeletal and neurological systems appeared to be normal. (Tr. 429). During a September 16, 2009 follow-up, examining physician Dr. Emily Baillio of JCDH instructed Plaintiff to discontinue the use of Mobic, Ultram, and Flexeril for her osteoarthritis, and instead prescribed Tylenol. (Tr. 428).

## II.   ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the

claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1420(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404. 1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the natural economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her applications for DIB and SSI benefits, and that she is afflicted with several severe impairments—degenerative joint disease of the lower back, osteoarthritis, and depression. (Tr. 24). However, the ALJ found that despite these maladies, Plaintiff "does not

have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (Tr. 25). After consideration of the record, the ALJ then determined that Plaintiff has the RFC to perform light work and that she experiences moderate pain and moderate depression with a moderate effect on her ability to concentrate. (Tr. 26). The ALJ ultimately determined that Plaintiff is capable of performing past relevant work as a daycare worker which does not require performance of work-related activities precluded by Plaintiff's RFC. (Tr. 32). Based upon this determination, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Act, from June 12, 2006, through the date of this decision. (Tr. 33).

### III.     Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ did not give proper weight to the medical opinion provided by her treating physician, Dr. McAdams and that the ALJ committed an egregious error by dismissing Dr. McAdams's opinion. (Pl.'s Mem. 6).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42. U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131(11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence". *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**V.      Discussion**

After careful review, the court concludes for the reasons stated below that substantial evidence supports the ALJ's findings and that he correctly applied the law.

>    **1.      The ALJ Accorded Proper Weight to the Testimony of the Medical Expert**

Plaintiff argues that the ALJ erred by not giving proper weight to the opinion of Dr. McAdams, Plaintiff's treating physician. Plaintiff contends that as a treating physician, the opinion of Dr. McAdams must be given substantial weight. Treating physicians' opinions are afforded substantial weight because of the likelihood that these are the medical professionals most able to provide a detailed, longitudinal picture of a claimant's medical impairments. *See* 20 C.F.R. §§ 404.1527, 416.927. It is questionable, however, as to whether Dr. McAdams had developed such a relationship with Plaintiff when making his assessment and filling out her Physical Capacity Evaluation and Clinical Assessment of Pain.[2]

When evaluating the weight to be afforded a medical expert's opinion, the ALJ must consider certain factors: the relationship the doctor may have had with the claimant; the evidence the doctor presents supporting his opinion; the consistency of the opinion with the record as a whole; the doctor's specialty; and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, a treating physician's opinion is entitled to "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion

---

[2] *See Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 693, 698 (11th Cir. 2006) (per curiam) (unpublished) (noting that a physician who saw claimant only twice after the alleged onset date, did not have a longstanding relationship with claimant).

was conclusory or inconsistent with the doctor's own medical records. *Id*. When an ALJ disregards a treating physician's opinion for good cause, he "must clearly articulate [the] reasons" for doing so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (quoting *Phillips*, 357 F.3d at 1240-41). Here, the ALJ's reasoning for affording Dr. McAdams's opinion little weight is based on other more substantial grounds.

> a. **The Medical Records in this Case Provide Substantial Evidence Support for a Finding Contrary to the Opinion Reached by Dr. McAdams**

The record before the Court shows that Dr. Blankson, Plaintiff's treating physician from 2006 to 2009, consistently dictated in his examination notes that Plaintiff's musculoskeletal system was generally normal. (Tr. 225, 235, 237, 353, 430). Although Dr. Blankson did note that Plaintiff had muscle spasms in her shoulders, tennis elbow, and organic-related leg cramps, he did not find any other abnormalities that may have caused Plaintiff's pain. (Tr. 225-26, 230, 237, 354). Plaintiff repeatedly sought treatment from Dr. Blankson at JCDH throughout 2007 for shoulder pain, but each time Dr. Blankson found no abnormalities in her musculoskeletal system, aside from a one-time finding of lateral epicondylitis, also known as tennis elbow. (Tr. 220-30, 233, 235). To further corroborate Dr. Blankson's findings, Dr. Chandra Prabha Haritha, at JCDH examined Plaintiff in October 2007, and indicated Plaintiff's neck and lower back were normal, with good range of motion in her neck, though she experienced some discomfort, which radiated to her left shoulder. (Tr. 232). Plaintiff sought treatment from JCHD fifteen times during her alleged period of disability, but only received a physical examination nine of those times, the other six visits Plaintiff was seeking medication refills. (Tr. 224-41). Seven of Plaintiff's nine physical examinations found her musculoskeletal system to be normal and her cervical spine rotation not diminished. (Tr. 224-41). The two abnormal examinations resulted in a one-time diagnosis of tennis elbow and muscle spasms in both shoulders. (Tr. 229-30, 236-37). This

evidence supports the ALJ's finding that Dr. McAdams's opinion failed to bear any congruency to the record. (Tr. 32).

The ALJ gave substantial weight to the findings and opinion of consultative psychological examiner, Dr. Thomas Boll and physical examiner Dr. Raveendran Meleth, both of which based their findings on direct observation of Plaintiff and a review of Plaintiff's entire medical history. Dr. Boll conducted a psychological evaluation in May 2008. (Tr. 29, 251-53). Dr. Boll found that Plaintiff functioned "more or less independently with the help of some friends" and that she was "only very mildly depressed." (Tr. 29, 251-53). Dr. Boll also determined that Plaintiff was able to carry out, remember and understand instructions, and able to respond appropriately to co-workers and concluded that Plaintiff had no psychological impairments. Dr. Meleth described Plaintiff as suffering from lower back pain due to degenerative joint disease, shoulder pain, hand pain due to osteoarthritis, anxiety, depression, and a history of panic attacks. He also noted that Plaintiff was not cooperative for the full range of motion examination and that she was too drowsy to test fully. (Tr. 29, 255-58). The ALJ determined both the findings of Dr. Boll and Dr. Meleth were consistent internally and also consistent with the evidence as a whole. (Tr. 31).

      b.      **Dr. McAdams's Opinion was Inconsistent with his Own Records.**

The ALJ explained that "[t]he relative mildness of treatment employed by Dr. McAdams and the lack of any dramatic findings in his examination of [Plaintiff] call into question the opinion rendered by the doctor." (Tr. 31). The ALJ continued by stating that the forms given to Dr. McAdams by Plaintiff's attorney were "devoid of explanation and utterly lacking in citations to the medical record." This resulted in a "significant disparity between what Dr. McAdams

11

wrote in his clinical notes and what he puts forward as an opinion regarding [Plaintiff's] disability…". (Tr. 31).

The ALJ's decision to give less than substantial weight to the opinion of Dr. McAdams is supported by evidence showing good cause. Although the ALJ only needed one instance of good cause as defined by case law to disregard the treating physician's opinion, the ALJ provided Plaintiff with multiple instances. After review of the entire record, the Court concludes that the ALJ demonstrated good cause to disregard the medical opinion of Dr. McAdams.

  2. **The ALJ Clearly Articulated his Reasons for Affording Less Than Substantial Weight Dr. McAdams's Opinion**

In addition, the ALJ clearly articulated his reasons for giving little weight to the opinion of Dr. McAdams for which he had good cause for doing so. For example, he noted the following: the mildness of treatment employed by Dr. McAdams and the lack of any dramatic findings in his examinations; the lack of clinical notes referencing Plaintiff's extreme pain and corresponding extreme limitation of function; the lack of explanation in the forms supplied by Plaintiff's attorney and signed by Dr. McAdams; the lack of supporting evidence and congruency of the doctor's opinion as compared to the record; and a significant disparity between the clinical notes and Dr. McAdams's opinion regarding disability. (Tr. 24-34).

  3. **The ALJ Did Not Commit an "Egregious Error" by Dismissing the Opinion of Dr. McAdams as Inconsistent with the Record Evidence Without First Recontacting the Doctor for Clarification.**

Plaintiff alludes to the argument that the ALJ committed egregious error by not recontacting Dr. McAdams for clarification after finding the doctor's opinion inconsistent or incomplete. However, this argument fails to correctly interpret the statute and controlling case law correctly.

The Regulations in effect at the time of the ALJ's decision provide that medical sources should be recontacted when the evidence received is inadequate or incomplete. 20 C.F.R. §§ 404.1512(e), 416.912(e). Social Security Ruling 96-5p further states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96-5p. Regarding whether the ALJ's failure to recontact a treating source warrants remand, the Eleventh Circuit has stated that the court is guided by " whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Couch v. Astrue,* 267 Fed. Appx. 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995)). "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [her] allegations of disability.'" *Id.* (quoting *Shalala,* 44 F.3d at 936 n.9).

After careful review, the court concludes that the ALJ was not required to contact Dr. McAdams for clarification. Substantial evidence supports the ALJ's decision that Plaintiff was not disabled at the time of her hearing. Thus, there was no need for additional information or clarification from Dr. McAdams. *See Couch,* 267 Fed. Appx. at 855-56 (finding that no duty to recontact existed where substantial evidence supported the ALJ's decision); *Osborn v. Barnhart,* 194 Fed. Appx. 654, 668-69 (11th Cir. 2006). Accordingly, the court concludes that the ALJ properly considered the opinion for Dr. McAdams and that the ALJ did not err in failing to recontact Dr. McAdams for clarification of his opinion.

**VI.   Conclusion**

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching

this determination. Thus, the Commissioner's final decision is due to be affirmed. A separate order consistent with this memorandum of decision will be entered.

    **DONE** and **ORDERED** on November 20, 2013.

                                      **R. DAVID PROCTOR**
                                      UNITED STATES DISTRICT JUDGE